ANDREW J. HOOBLER *et al.*

*v.*

LYDIA A. HOOBLER.

*Filed at Ottawa May 16, 1889.*

1. TRIAL BY JURY—*in chancery—issues agreed upon—conclusiveness.* Where the parties to a bill in chancery agree to the issues of fact to be submitted to the jury, neither of them will be permitted to allege that such issues were improper, either in form or substance.

2. SAME—*instruction—whether substituting new issues.* On bill to set aside a deed and a contract, on the ground of incapacity in the maker to transact business, and fraudulent and false representations, the court instructed the jury, that if either of these grounds was sustained, the allegation of the bill that said instruments were wrongfully and improperly obtained was made out: *Held,* that this was in no sense a substitution of new issues, but an instruction properly informing the jury as to what facts must be found to entitle the complainant to a verdict upon the issues already submitted.

3. SAME—*new trial—verdict against the evidence.* On bill to set aside a deed and contract made by a widow to an heir, on the ground that she, owing to old age, bodily infirmity, sickness and mental weakness, was incapable of transacting business, and that false representations were made by the grantee as to the condition and value of the estate and property released, the evidence was directly and sharply conflicting. The jury to whom the issues were submitted found in favor of the complainant, and their finding was approved by the trial court. 'The complainant's evidence clearly supported the finding and decree, and the evidence for the defendant merely raised a conflict, but there was no such preponderance in the defendant's favor as to show that the jury misconceived or misconstrued the evidence: *Held,* that in such a case the finding of the jury was conclusive in this court.

4. ERROR WILL NOT ALWAYS REVERSE—*improper evidence.* Where the subject matter of interrogatories to witnesses is proper, and calls for evidence in the main pertinent to the issues raised by the pleadings and submitted to the jury, the fact that some of the questions may have been improper in form will not call for a reversal, when the answers, taken in connection with the entire evidence, have worked no injury to the other party.

APPEAL from the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. STRAWN & PATTON, for the appellants.

Mr. H. H. McDOWELL, and Messrs. McILDUFF & TORRANCE, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Lydia A. Hoobler against Andrew J. Hoobler and others, the children and grand-children and heirs at law of John Hoobler, the complainant's deceased husband. The bill prays for the cancellation of a quit-claim deed executed by the complainant, purporting to convey to Andrew J. Hoobler her interest in the real estate of her deceased husband, and for the recovery of her dower and homestead therein, and for the cancellation of a certain other instrument executed by the complainant, purporting to be an assignment and relinquishment by her to Andrew J. Hoobler, of her widow's award and dower in the personal estate of her said husband, and for the recovery of said award, and of all her other property, rights and interests in said estate. Answers and replications were duly filed, and certain issues having been submitted to and tried by a jury and found for the complainant, a decree was entered in her favor in accordance with the prayer of her bill.

The complainant and John Hoobler were married about the year 1872, both being then somewhat advanced in years, and both having previously been married. They lived together on a place consisting of thirteen acres of land belonging to John Hoobler near Manville, Livingston county, until sometime in the year 1885, and then for some reason which the record does not explain, and which so far as this suit is concerned is im-material, they ceased to live together, John Hoobler going then or sometime afterward to live with his son Frederick who was residing near him, and the complainant going to her daughter's who was living near Muncie, in Vermilion county. After re-maining with her daughter for a few weeks, and visiting for a

short time with other friends, the complainant took up her residence in a small house owned by her in Muncie, where she lived until the death of her husband, which took place April 17, 1886.

John Hoobler, at the time of his death, was the owner of the thirteen acres of land already mentioned, worth about $1500, and which had been occupied by him for a considerable time as his homestead. He was also the owner of personal property, consisting almost entirely of promissory notes, of the value of $4000. The complainant was not present at her husband's death, and was not notified and had no information of his last sickness or death until the sixty days during which she as widow was entitled to preference in the appointment of administrator had nearly expired. Having accidentally learned of his death, she caused the proper application to be filed for letters of administration to herself and one Avery, and letters were issued to them accordingly within the sixty days after the death of her husband.

The complainant was about seventy-one years of age at the time of her husband's death, and was then in feeble health. The evidence tends to show that she had then recently suffered an attack of severe illness from which she had not recovered, and that at the time the letters of administration were issued, and at the time of the execution of the instruments which she now seeks to have cancelled, she was still suffering great weakness both of body and mind, consequent upon her illness.

On the 9th day of July, 1886, which was a few days after letters of administration were issued, Andrew J. Hoobler, accompanied by one David Gouty, a grandson of John Hoobler, went to see the complainant at her home in Muncie, Vermilion county. Before going, and before having any negotiations with the complainant in relation to a relinquishment by her of her interest in her husband's estate, he caused a quit-claim deed conveying to him all her interest in her husband's lands, and another instrument assigning and transferring to him all her

interest in his personal estate, to be drafted. These drafts he took with him. He went by rail, but instead of stopping off at Muncie, he went on to Danville and there met Gouty, and was driven back by him in a buggy to Muncie, Gouty claiming that he wished to go to a point several miles beyond Muncie to look for some hay which he intended to buy.

At the interview between Hoobler and the complainant at the house of the latter, brought about as above indicated, Hoobler induced the complainant to execute both of the instruments above mentioned, and the evidence is undisputed that the only consideration given by him to her for said conveyance and assignment was the payment to her of $100 in money, and an agreement to pay her attorney for his services in the matter of suing out the letters of administration, the fees of said attorney, as was afterwards ascertained, being $15.

Andrew J. Hoobler seems to have been the member of the family of the complainant's husband with whom the complainant was on the most friendly terms, and the evidence shows, without contradiction, that she reposed in him very considerable confidence. At the interview at which said papers were executed, there were present, in addition to the complainant and Hoobler, said Gouty, and Mollie Long, the complainant's niece, who had been with her for several weeks taking care of her in her illness. The accounts of the interview given by the complainant and Mollie Long on the one hand, and by Hoobler and Gouty on the other, are essentially different. According to the account given by the complainant in her testimony—and she is corroborated in all essential particulars by the testimony of Mollie Long—Hoobler and Gouty came to her house, giving her to understand at first that their errand there was to hunt for some hay, and asking her where she thought they could find some. After some conversation on that subject and other general topics, the complainant herself referred to the fact that she had taken out letters of administration on her husband's estate. Hoobler told her in reply

that he had heard of it and had come on purpose to settle it up; that his father on his death bed had said that he did not wish any litigation about his estate, and had charged him, Andrew J. Hoobler, to be sure and see to it that the complainant got her share of the estate. This latter direction from his father, Hoobler, according to the complainant's version of the interview, repeated many times. She also testifies that during portions of the interview, while they were conversing in relation to the death of the complainant's husband, both she and Hoobler were in tears.

She told him in explanation of her having taken out letters of administration, that her husband had been dead nearly two months before she knew of it; that her husband had asked her to write to him often, and that she had sent letters to him, but that they had not allowed her to hear from him, and that she thought it was about time something was done. Hoobler then expressed a doubt about her being able to get anything; that there seemed to be nothing which could be gotten hold of. She thereupon called his attention to the promissory notes her husband had at the time of their separation. He told her the notes had all been squandered, and repeated that statement over and over again, and said that whatever he paid her by way of settlement would have to come out of his own pocket. She then asked him what had become of the real property, and said she ought to have her share in that. That, he said, was so little that it would be of no benefit to her; that it would not rent for more than $30 a year, and that she would be entitled to only one-third of that, which would be only $10 a year. She suggested that it might be sold, but he assured her that it could not be while she lived, and this opinion was echoed by Gouty. He also stated to her as an additional reason why she had better sign said papers that his brother Fred. had said that if she did not sign them and thus compromise the matter, he would law her as long as he had a cent to law with.

She testifies that she believed that Hoobler was her friend, and believed what he told her. After these various representations, Hoobler asked her to say what she was willing to take for a relinquishment of her interest in the estate. She replied that if it was to come out of his pocket she would take $100, and the papers were thereupon executed on those terms, with the addition that Hoobler also agreed to pay the complainant's attorney, which he afterwards did.

According to Andrew J. Hoobler's version of the interview, and he is in the main corroborated by the testimony of Gouty, nothing whatever was said about the notes having been squandered, but the complainant was told that the notes were all in existence and were at Hoobler's brother Fred's house where his father died; that he explained to her fully and truly the situation of the estate and the nature of her rights; that he also told her that his father, on his death bed, said to him that at the time of his marriage with the complainant, there was an agreement between him and the complainant that in the event of the death of either, the property of the one so dying should go to his or her children. The complainant on her part testifies that there was nothing whatever said in her conversation with Hoobler in relation to said alleged ante-nuptial contract.

The bill alleges, as the grounds for relief, that at the time said instruments were executed by which the complainant relinquished her interest in her husband's estate, she was past seventy-one years of age, very infirm and broken down with disease, and unfitted and incapacitated for transacting business; that Andrew J. Hoobler came to her and represented, in substance, that her husband's estate was wholly insolvent, and that to persist in the administration would only create costs, and that rather than have her involve herself in fruitless litigation, he would pay her $100 out of his own pocket for a release of her apparent interest in the estate; that she being too old and infirm to go to Livingston county to look after her

interests and find out the truth in relation to the estate, and relying upon the representations so made in apparent good faith by said Hoobler, accepted his offer of $100 and executed said papers, said Hoobler well knowing at the time that his statements and representations were false, and that said estate was in fact solvent and worth at least $6000, and that the complainant was entitled to her homestead, her dower and her widow's award, worth in all at least $2000. The bill further alleges, that, at the time of the execution of said papers, she was almost wholly prostrated from disease, and was sick and infirm and incapable of transacting said business, and that said Hoobler at the time knew that she was sick and infirm and incapable of understanding and comprehending the nature of the transaction, and that said Hoobler sought said time and opportunity to influence the complainant by sophistry and money, and that it was under these circumstances and these influences the complainant signed said deed and assignment and accepted said $100 therefor.

It will be seen that the evidence in relation to the charges of fraud made by the bill is directly and sharply conflicting. The jury, before whom the witnesses appeared and testified, found that said charges were sustained, and their finding has been approved by the chancellor who rendered the decree, and we can not, from anything apparent to us from the record, say that the evidence has been misconceived or misconstrued, or that there is any such preponderance against the verdict of the jury or the decree of the court as would warrant us in setting the decree aside and ordering a rehearing. The evidence of the complainant clearly supports the decree, and the evidence for the defense merely raises a conflict, but it is a conflict where there is no such preponderance as should take the case out of the ordinary rule, that where the jury and chancellor see and hear the witnesses, their finding upon questions of fact where the evidence is merely conflicting is conclusive.

Complaint is made of the form in which the issues were made up and submitted to the jury. The issues, as submitted, were as follows:

1. "Was the deed from complainant to Andrew J. Hoobler improperly and wrongfully obtained from her, as is alleged in the bill?

2. "Was the agreement named in said deed as being made by complainant to said Andrew J. Hoobler, improperly or wrongfully obtained from her, as alleged in said bill of complaint?"

While it is manifest that these issues were not so formed as to clearly present the questions of fact which should have been submitted to the jury, it is sufficient for the purposes of this appeal to say, that it affirmatively appears from the record that the issues as submitted were agreed to by the parties. After entering into such agreement, the appellants will not be permitted to allege that the issues were improper, either in form or substance.

Complaint is made of the first instruction given to the jury at the instance of the complainant, which was as follows:

"The court instructs you that there are two allegations in the bill, either of which, if true, would authorize you to find the issues presented to you for complainant. First:—Was the complainant in such condition mentally at the time of signing the deed and contract in evidence as not to understand the nature and result of the act she was performing? Second:— If she did understand the nature and result of her acts, did Andrew J. Hoobler falsely and fraudulently represent the condition of her husband's estate to her at the time, as alleged in the bill, and did she thereby, relying on such statements, sign such deed and contract, when she would not have done so had she known the true condition of such estate? If you find that she did not understand the nature of her act when signing the deed and contract in evidence, because of her mental condition,

then you should find both of the issues submitted to you in the affirmative. If you find that she did understand the nature and result of her act when signing the deed and contract in evidence, but find she signed the same because of false representations made to her by Andrew J. Hoobler, as alleged in the bill, then you should find both of the issues submitted to you in the affirmative."

The criticism upon this instruction is, that it submits to the jury issues different from those which they were impannelled to try. This is clearly a misapprehension. It merely calls the attention of the jury to each of the two substantive grounds of relief set up in the bill and upon which it is claimed that the instruments which the bill seeks to have cancelled were improperly and wrongfully obtained. It then instructs the jury that if either of these grounds is sustained, the allegation of the bill that said instruments were improperly and wrongfully obtained is made out, and that in such case the verdict of the jury should be for the complainant on both issues. This was in no sense a substitution of new issues, but an instruction properly informing the jury as to what facts must be found to entitle the complainant to a verdict upon the issues already submitted. An instruction the precise counterpart of the foregoing was given on the part of the defendants, which, after reciting literally the issues submitted to the jury, proceeds as follows :

"And under said issues so submitted, before Mrs. Hoobler can recover, she must prove, either that she was incapable of transacting ordinary business at the time she executed the deed and agreement or release as explained in other instructions, or that she was procured to execute the deed and release by false and fraudulent representations as explained in other instructions, or that she was procured to execute the deed and release under undue influence, as explained in other instructions."

Complaint is made of various other rulings of the court in giving and refusing instructions to the jury. We could not, without unreasonably prolonging this opinion, discuss each of the several instructions criticised but are disposed to content ourselves with saying that we have carefully considered each of the points made, and are of the opinion that none of them are well taken. The law was given to the jury with substantial accuracy, and there was no material error in the rulings of the court in that respect.

Various exceptions were also taken to decisions of the court overruling objections to interrogatories put by the complainant to her witnesses. These interrogatories called for answers relating to the physical and especially the mental condition of the complainant at and about the time she executed the instruments in question, to her being of weak mind and easily influenced, and to her capability of transacting business and of understanding the nature and consequences of the business she was engaged in at the time she executed said instruments. It can not be doubted that in the main the subject matter of these interrogatories was proper, and called for evidence pertinent to the issues raised by the pleadings and submitted to the jury. Some of the questions objected to were probably improper in form if not in substance, but when taken in connection with the answers elicited and the entire scope of the evidence, we are of the opinion that no error was committed in that respect of a nature so serious as to require a reversal of the decree.

As we find no material error in the record, the decree will be affirmed.

*Decree affirmed.*